IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 19, 2022

## STATE OF TENNESSEE v. TONY LATRELL GREER

**Appeal from the Circuit Court for Madison County**
**No. 20-322    Donald H. Allen, Judge**

_____

## No. W2021-01329-CCA-R3-CD

_____

The Defendant-Appellant, Tony Latrell Greer, pleaded guilty to second degree murder, attempted aggravated robbery, and conspiracy to commit aggravated robbery. The trial court sentenced the Defendant as a Range II, multiple offender to concurrent sentences of thirty-three years, ten years, and ten years, respectively. On appeal, the Defendant challenges the length of the sentences imposed by the trial court. After review, we remand the case for entry of corrected judgment forms as specified in this opinion. In all other respects, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Joseph T. Howell, Jackson, Tennessee, for the Defendant-Appellant, Tony Latrell Greer.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On June 1, 2020, the Madison County Grand Jury returned a multi-count indictment charging the Defendant on count one with first degree murder in the perpetration of a felony, specifically attempted aggravated robbery; on count two with conspiracy to commit aggravated robbery; and on count three with attempted aggravated robbery. On August 24, 2021, the Defendant pleaded guilty to second degree murder, conspiracy to commit aggravated robbery, and attempted aggravated robbery. The State and the Defendant agreed that although the Defendant was classified as a Range II offender on only counts two and three, the Defendant was pleading guilty as a Range II, multiple offender on all

three counts. The plea agreement further provided that the sentences would be served concurrently with each other but consecutively to a previously imposed four-year sentence for an aggravated burglary conviction. Finally, the plea agreement provided that the trial court would determine the length of the sentences.

As a factual basis for the guilty pleas, the State said that on April 30, 2018, an individual brandishing a gun entered the Goldline gas station and convenience store, which was located "on the corner of Old Hickory and the Bypass." The security video from the store showed that two clerks were on duty. One of the clerks, Najeab Alshaif, apparently believed that "it was a joke," because he began "waving brown paper bags that they put merchandise in, just kind of shooing them off." At that point, the gunman shot the victim in the abdomen, the gunman fled the store, and the other clerk tried to assist the victim. When law enforcement arrived, the victim was alive, and he was sent to the hospital. However, six or eight hours later, he died as a result of his gunshot wound. The gunman did not take anything from the store.

The identity of the gunman could not be discerned from the security video because the face was covered, and the person was wearing dark clothing. Accordingly, the case remained unsolved.

In January 2019, while the Defendant was in jail after receiving his four-year sentence for aggravated burglary, the Defendant confessed to law enforcement that he was the gunman who had gone into the store in the "Goldline incident" and that he had been assisted by Michael Brown, who was his co-defendant in the aggravated burglary. The Defendant said that Brown told the Defendant about the location to be robbed, and Brown remained outside the store. The Defendant said that he and Brown discussed the robbery prior to the incident and that they planned to share in the proceeds.

The State asserted that it was likely the case would not have been solved without the Defendant's coming forward. The Defendant testified at Brown's preliminary hearing and trial. The Defendant agreed to the facts recited by the State. The State said that the Defendant's family had agreed to the guilty plea.

At the sentencing hearing, the State submitted the Defendant's presentence report as an exhibit. The State presented no other proof.

Sergeant Nic Donald with the Jackson Police Department's Major Crimes Unit testified as the Defendant's first witness. Sergeant Donald was the lead investigator on the case, but he did not interview the Defendant. For approximately a year and a half, the police had no suspects or leads. However, the police were able to prosecute the Defendant after he contacted the police, Officer Chestnut interviewed him, and he admitted that he

and Brown were involved in the crime. Sergeant Donald said that the Defendant had fully assisted the police since he contacted the police and confessed his role in the crime.

Sergeant Donald acknowledged that the Defendant testified at the preliminary hearing and at Brown's trial. Sergeant Donald conceded that the State would have been unable to convict Brown without the Defendant's testimony. The Defendant never asked for anything in return for his testimony; he said only that he "wanted to get i[t] off his chest and wanted to clear his conscience." In his fifteen years in law enforcement, Sergeant Donald had never experienced that level of cooperation from a defendant. If the Defendant had kept quiet, he would not have been prosecuted. The Defendant was respectful and remorseful. Sergeant Donald opined the Defendant was worthy of leniency because he "took responsibility for what he did." Sergeant Donald thought the Defendant "was put in a situation where he did something, not being a leader, being a follower, and was put in a situation[,] . . . but he did the honorable thing in the end to make this right the best way he could . . . ."

On cross-examination, Sergeant Donald said that it had been difficult to get the victim's family to court, noting that the majority of the victim's family was from the Middle East and that Sergeant Donald had been in contact with one nephew, who lived out of state, as a representative of the family. The family had agreed to the Defendant's plea agreement, but the nephew wanted Brown to be held accountable because he believed Brown was responsible for the crime. Brown was convicted of the charged offenses of felony murder, conspiracy to commit aggravated robbery, and attempted aggravated robbery.

Officer Chris Chestnut with the Jackson Police Department's Major Crimes Unit testified that the police had no leads after the homicide. He explained that neither the race nor the sex of the suspect could be determined from the security video. One day, Officer Chestnut received a call saying that the Defendant wanted to provide information relating to a homicide. Later that afternoon, Officer Chestnut had the Defendant brought to his office to give a statement. The Defendant confessed to the homicide because it was "weighing on his conscience." The Defendant did not ask for anything in return for his confession.

Officer Chestnut said that the Defendant testified at Brown's preliminary hearing and trial and that the State would have been unable to prosecute Brown without the Defendant's cooperation. Officer Chestnut agreed that since he became a police officer in 1996, he had never seen the Defendant's level of cooperation. Officer Chestnut thought the Defendant was worthy of leniency. Officer Chestnut believed the crime would not have occurred without Brown because Brown planned and facilitated the crime and transported the Defendant from another county to commit the crime. Officer Chestnut said that the Defendant was the most remorseful person he had ever seen. Officer Chestnut noted that

the Defendant took full responsibility for the shooting but that he said Brown was responsible for "the planning, the staging, the providing the firearm, the vehicle, the transportation, [and knowing] the layout of the business."

The Defendant made a statement to the court. He admitted that he had committed a crime, and he said that he was sorry. He thought taking responsibility was the right thing to do. He stated, "I'm sorry about the guy's family, that they missing him." He asked the court for "compassion and leniency" so he would have a chance at release to be with his family one day.

The trial court considered the nature and characteristics of the crime, the principles of sentencing, the enhancement and mitigating factors, the proof adduced at the guilty plea hearing and the sentencing hearing, and the Defendant's rehabilitative potential. Regarding enhancement factors, the trial court found that the Defendant had a previous history of criminal convictions or criminal behavior in addition to what was necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1). The trial court noted that the Defendant had five prior felony convictions and thirty-eight prior misdemeanor convictions. The Defendant's criminal history began when he was seventeen years old and continued until he was thirty-six years old and was convicted of the instant offenses. The trial court further noted that since the instant offense occurred, the Defendant had been convicted of aggravated burglary and misdemeanor theft. The trial court gave great weight to this enhancement factor.

The trial court found that the Defendant was a leader in the commission of these offenses which involve two or more criminal actors. See id. The trial court said that he found both the Defendant and Brown to be leaders. The trial court noted that Brown had targeted the business, secured the gun, and "cas[ed] the joint" prior to the commission of the crime. However, the Defendant was a leader because he went inside the business with the gun, attempted the aggravated robbery, and shot the victim, which ultimately led to the victim's death. The trial court gave this enhancement factor moderate weight.

The trial court further found that the Defendant before trial or sentencing failed to comply with a sentence or has failed to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(8). The court noted that from its review of the presentence report, the Defendant committed new offenses on at least fifteen occasions while on probation. The trial court gave great weight to this factor because it showed the defendant's failure to comply with the conditions of release into the community. The trial court noted that during the Defendant's periods of incarceration, he had been given opportunities for treatment but that "nothing changed because as soon as he gets out of prison, he gets arrested for committing a new offense." The court further noted that during the time that the instant "homicide remained unsolved, the defendant was

- 4 -

still out committing more offenses," including a driving on suspended license, fourth offense; failure to appear, aggravated burglary, and misdemeanor theft of property.

The trial court also found that at the time of the commission of the instant offenses, the Defendant was on probation for a misdemeanor offense. See Tenn. Code Ann. § 40-35-114(13)(C). The trial court gave great weight to this factor.

As mitigating factors, the trial court found that the Defendant assisted authorities in detecting or apprehending other persons who had committed the offenses. See Tenn. Code Ann. § 40-35-113(9). The trial court gave great weight to this factor, noting that without the Defendant's cooperation, it was likely Brown would never have been brought to justice. The trial court also found that the Defendant assisted the authorities in locating or recovering any property or person involved in the crime. See Tenn. Code Ann. § 40-35-113(10). The trial court gave this factor slight weight because law enforcement apprehended Brown within a couple of days of speaking with the Defendant. The court thought "law enforcement officers knew where they could find Michael Brown".

The trial court also found that the Defendant pled guilty, accepted responsibility for his actions, provided truthful testimony against Brown, cooperated from the beginning, and appeared to be remorseful. See Tenn. Code Ann. § 40-35-113(13). The trial court gave that factor great weight.

The trial court said that although the Defendant had requested a sentence at the lower end of the range, it considered "something more than the minimum" to be more appropriate given the Defendant's extensive criminal history. Accordingly, the trial court sentenced the Defendant as a Range II, multiple offender to the maximum sentence of ten years for the attempted aggravated robbery conviction "to serve" and for the conspiracy to commit aggravated robbery conviction, which was to be served at 35% release eligibility. See Tenn. Code Ann. § 40-35-112(b)(3). For the second degree murder conviction, the trial court sentenced the Defendant to thirty-three years, 100% of which the Defendant would have to serve in confinement. The sentences were to be served concurrently with each other but consecutively with the previously imposed four-year sentence for aggravated burglary.

The trial court told the Defendant that he was "very fortunate" because the trial court suspected the Defendant would have been convicted of first-degree murder at trial and would have received a life sentence. The court explained that even though the Defendant confessed and admitted responsibility, it did not lessen what he had "done in this case in terms of taking the life of [the victim]."

On appeal, the Defendant challenges the sentences imposed by the trial court.

## ANALYSIS

This court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court abuses its discretion only when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. State v. Herron, 461 S.W.3d 890, 904 (Tenn. 2015). The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." Bise, 380 S.W.3d at 708. In particular, these amendments "rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by— but not bound by—any applicable enhancement or mitigating factors when adjusting the length of a sentence." Id. at 706. "[W]hile a trial court's less comprehensive findings may require appellate courts to more carefully review the record, sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Id. When imposing a sentence, a trial court "shall place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." Tenn. Code Ann. § 40-35-210(e).

A trial court must consider the following when determining a defendant's sentence:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and
(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Id. § 40-35-210(b). In addition, the trial court must consider "the record of prior felony convictions filed by the district attorney general with the court, as required by § 40-35-202(a)." Id. § 40-35-210(f).

The trial court shall impose "a sentence justly deserved in relation to the seriousness of the offense[.]" Id. § 40-35-102(1). The court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102(5), -103(5). In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Id. §§ 40-35-103(2), (4).

On appeal, the Defendant contends that while the trial court considered the mitigating and enhancement factors, it "gave inappropriate consideration to those factors and imposed a mid-range sentence." The Defendant argues that the mitigation factors outweighed the enhancement factors.

This court has previously explained that in giving the trial court broader discretion to be guided by any applicable enhancement or mitigating factors,

> a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

State v. Nathaniel A. Rhodes, No. M2018-00136-CCA-R3-CD, 2019 WL 4052535, at *8 (Tenn. Crim. App. Aug. 28, 2019) (quoting Bise, 380 S.W.3d at 706). Significantly, "the 2005 amendments deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008). Nothing in the record indicates that the trial court wholly departed from the purposes and principles of sentencing or that it abused its discretion in sentencing the Defendant. We will not reweigh the trial court's application of mitigation and enhancement factors.

As a final note, we detect some clerical errors in the judgment forms that require correction. According to the sentencing hearing transcript, the trial court specified that the Defendant's conviction of second degree murder in count one was to be served at 100%. Although the "special conditions" box of the judgment form for count one reflects that the Defendant was "[t]o serve" the conviction and to have "[n]o contact with victim's family," the release eligibility box indicating that the Defendant was required to serve 100% of the sentence pursuant to Tennessee Code Annotated section 40-35-501(i) was not marked. Further, on the judgment form for counts two and three, the special conditions box provides, "Please see count 1," which incorrectly suggests that the Defendant was "[t]o

serve" his ten-year sentences at 100%. Further, although the box designating the Defendant as a multiple offender was marked on the judgment forms for counts two and three, the box directing that as a multiple offender the Defendant was to serve his ten-year sentences at 35% was not marked. Accordingly, we must remand to the trial court for entry of corrected judgments reflecting on count one that the Defendant was to serve 100% of his sentence pursuant to Tennessee Code Annotated section 40-35-501(i); on counts two and three that he was a multiple offender subject to 35% release eligibility; and on two and three for a correction of the special conditions box to provide only the condition to not have contact with the victim's family.

## CONCLUSION

The case is remanded for entry of corrected judgment forms as specified in this opinion. In all other respects, the judgments of the trial court are affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE